UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF MICHIGAN

SHEILA F. CROOKS and STEPHEN C. CROOKS, in their individual capacities and as Trustees of the STEPHEN C. CROOKS AND SHEILA F. CROOKS TRUST dated May 31, 2018, as amended,

Plaintiffs,

v.

ROSS FERNANDEZ,
OWOSSO BURGERS, INC.,
ODW PROPERTIES – OWOSSO, LLC,
OTSEGO BURGERS, INC.,
ODW OTSEGO, LLC,
LUDINGTON BURGERS, INC.,
ODW PROPERTIES – LUDINGTON, LLC,
LAPEER BURGERS, INC.,
ODW PROPERTIES – LAPEER, LLC,
CADILLAC BURGERS, INC.,
ODW PROPERTIES CADILLAC, LLC,
BIRCH RUN MI BURGERS, INC. aka BIRCH RUN BURGERS,
ODW PROPERTIES – BIRCH RUN, LLC,
ALPENA BURGERS, INC.,
ODW PROPERTIES ALPENA, LLC.,
S&L PROPERTIES OWOSSO, LLC,

Defendants.

CASE No:

JUDGE

**COMPLAINT**

**JURY TRIAL DEMANDED**

Jeffrey S. Theuer (P44161)
Foster Swift Collins & Smith PC
313 S. Washington Square
Lansing, MI 48933
Phone: 517-371-8284
jtheuer@fosterswift.com
Attorneys for Plaintiffs

---

## COMPLAINT

Plaintiffs Sheila F. Crooks and Stephen C. Crooks, and the Stephen C. Crooks and Sheila F. Crooks Trust, dated May 31, 2018, as amended (the "Trust"), by and through their undersigned counsel, bring this Complaint against the Defendants identified herein and state as follows:

## PARTIES, JURISDICTION AND VENUE

1. Plaintiffs Sheila F. Crooks and Stephen C. Crooks are individuals residing at 12154 N. Red Mountain Dr., Oro Valley, Arizona 85755, and are the Co-Trustees of the Stephen C. Crooks and Sheila F. Crooks Trust, dated May 31, 2018, as amended.

2. Plaintiff Trust is a Michigan Trust located at 3948 North Holland Road, Stanton, Montcalm County, Michigan. The Trust is sometimes referred to in the relevant documents as the "Stephen and Sheila Crooks Trust" or the "Steve and Sheila Crooks Trust," or similar misnomer.

3. Defendant Ross Fernandez ("Fernandez") is an individual upon information and belief residing at 3993 S. Castor Road, Breckenridge, Gratiot County, Michigan, doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

4. Defendant Owosso Burgers, Inc., is a Wisconsin corporation registered as a foreign corporation by the state of Michigan, and doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

5. Defendant ODW Properties - Owosso, LLC, is upon information and belief, an unregistered entity operated by Defendant Fernandez and doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

6. Defendant Otsego Burgers, Inc., is a Michigan corporation doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

7. Defendant ODW Otsego, LLC is a Michigan limited liability company doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

8. Defendant Ludington Burgers, Inc., is a Michigan corporation doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

9. Defendant ODW Properties - Ludington, LLC, is a Michigan limited liability company doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

10. Defendant Lapeer Burgers, Inc., is a Michigan corporation doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

11. Defendant ODW Properties - Lapeer, LLC, is a Michigan limited liability company doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

12. Defendant Cadillac Burgers, Inc., is a Michigan corporation doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

13. Defendant ODW Properties Cadillac, LLC, is a Michigan limited liability company doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

14. Defendant Birch Run MI Burgers, Inc., is a Michigan corporation doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan. This entity is erroneously identified as Birch Run Burgers, Inc. on some corporate documents.

15. Defendant ODW Properties – Birch Run, LLC, is a Michigan limited liability company doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

16. Defendant Alpena Burgers, Inc., is a Michigan corporation doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

17. Defendant ODW Properties Alpena, LLC, is a Michigan limited liability company doing business at 23820 Eureka Road, Taylor, Wayne County, Michigan.

18. Defendant S&L Properties Owosso, LLC, is a Wisconsin limited liability company, registered as a foreign company in the State of Michigan in 2018, but not in good standing as of March 1, 2022, with a place of business located at 23820 Eureka Road, Taylor, Wayne County, Michigan.

19. This Court has jurisdiction over this action pursuant to Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

20. Venue is proper in this judicial district pursuant to 15 U.S.C. § 78aa and 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this District and because Defendants reside or transact business in this District.

21. Plaintiffs bring this action against Defendants for violations of Section 10b of the Securities and Exchange Act of 1934, 15 U.S.C. 78j ("Section 10b") and related Rule, 17 C.F.R. 240.10b-5 ("Rule 10b-5"), for shareholder and limited liability company member oppression, misrepresentation, fraud, breach of contract,

common law and statutory conversion of money, violation of Michigan securities statutes, breach of fiduciary duty, and breach of promissory Note and Guaranty.

## FACTUAL ALLEGATIONS

22. Plaintiffs provided investment funding to Defendant Fernandez for purchase of interests in a series of limited liability companies and corporations which were controlled by Defendant Fernandez, in exchange for a combination of equity and fund repayment.

23. These business entities are operated as Culvers Restaurants.

24. Defendant Fernandez created a fraudulent scheme by which he wrongfully converted Plaintiffs' investment funds and equity in order to purchase or create other entities to operate Culvers Restaurants in which no equity interest was provided to Plaintiffs.

25. Plaintiffs provided investment capital which Defendant Fernandez used to buy or form business entities operating Culvers restaurants in Owosso, Ludington, Lapeer, Birch Run and Alpena, Michigan.

26. Under Fernandez' scheme, Plaintiffs were provided with minority positions in these businesses despite having provided as much as one hundred percent of the investment capital, with the promise by Fernandez that Plaintiffs would receive equity interests in additional restaurant purchases that would collectively reflect the total amount of their investment.

27. Upon information and belief, Defendant Fernandez purchased two additional Culvers restaurants, in Otsego and Cadillac, Michigan, and others, in whole or in part using proceeds from unauthorized distributions from the five restaurants that were funded directly by Plaintiffs.

28. No shareholder approval was sought by Defendant Fernandez for the distributions of capital for these purchases.

29. Plaintiffs were initially provided minority interests in the Otsego and Cadillac restaurants.

30. Plaintiffs signed Culvers Franchise Agreements for each of the Defendant businesses as franchisee co-owners at the request of Fernandez, and upon information and belief, as required by Culvers because Plaintiffs had contributed the capital.

31. Defendant Fernandez created Shareholder Agreements for each of the Defendant corporations, which operated the restaurants, and Buy-Sell Agreements for the Defendant limited liability companies, which owned the land, that showed Plaintiffs' minority investment interests, but substantially and materially understated Plaintiffs' capital contribution for each entity.

32. These agreements were amended in February 2022 (except the Owosso agreement which Fernandez asked Plaintiffs to sign in May 2022) to include or extend a highly and intentionally complex option for the "Manager" of

each company to purchase any member or shareholder's interest upon 30-days' written notice (the "Manager Purchase Option").

33. Defendant Fernandez presented these amended agreements to Plaintiffs demanding that they be signed immediately and without time for adequate review due to alleged financing requirements that needed to close immediately.

34. Later, Fernandez demanded that amended agreements be signed which extended the Manager Purchase Option related to loans Fernandez was obtaining from Wells Fargo Bank to purchase additional restaurants, in which Fernandez represented Plaintiffs would receive equity interests.

35. Upon information and belief, Defendant Fernandez used the proceeds of the Wells Fargo loans and revenue from the businesses for which Plaintiffs provided capital to purchase additional restaurants in Monroe Michigan, and in South Carolina, and elsewhere, in which Plaintiffs were provided no equity interest.

36. Upon information and belief, the loans with Wells Fargo were collateralized by and could not have been obtained without the funds invested by Plaintiffs in the Owosso, Ludington, Lapeer, Birch Run and/or Alpena restaurants and the security those assets could provide.

37. Upon information and belief, the Manager Purchase Option was not required to secure financing from Wells Fargo.

38. Defendant Fernandez' representations were false and misleading, and made solely for the purpose of creating the appearance of an emergency to induce Plaintiffs to sign the amended agreements without adequate review.

39. Defendant Fernandez did not allow Plaintiffs adequate time to review the amended agreements, particularly with respect to the Manager Purchase Option, which required close consideration of at least four separate sections of the amended agreements to fully understand.

40. Defendant Fernandez promised Plaintiffs that the amendments would not substantively change their equity interests or impair their investments.

41. Defendant Fernandez' representations were false and misleading, and designed to induce Plaintiffs to sign the amended agreements without adequate review.

42. Based on Fernandez' representations, Plaintiffs signed the amended agreements.

43. Plaintiffs do not have training or experience reviewing legal documents.

44. At the time, Plaintiffs trusted Fernandez. Fernandez had established a relationship with Plaintiffs through a prior business relationship, and Fernandez

schemed to create a sham friendship and position of trust with Plaintiffs when he became aware that Plaintiffs had funds to invest.

45. After the Wells Fargo loans were obtained, Fernandez no longer needed Plaintiffs' investments to get more loans, money or restaurants.

46. Defendant Fernandez withdrew two prospective restaurants in which Plaintiffs were promised minority investment interests in Traverse City and Gaylord, Michigan.

47. When Plaintiffs objected to the unilateral change in the investment program that had been established, Defendant Fernandez became hostile, and moved to complete the scheme he set in motion through the amended agreements and divest Plaintiffs of their equity interests in all the restaurants.

48. By this scheme, Defendant Fernandez unilaterally converted the equity funding provided by Plaintiffs to unsecured loans, thereby materially impairing and eliminating Plaintiffs' equity interests in the Owosso, Ludington, Lapeer, Birch Run, Alpena, Otsego and Cadillac restaurants.

49. Plaintiffs provided funding as an investment in equity in the various Culvers franchises in which they invested, as well as loans effectively secured by their equity in those restaurants.

50. Plaintiffs did not expect, intend, or agree that the equity funding they provided would be unilaterally converted to unsecured loans by Fernandez.

51. On December 1, 2022, Defendant Fernandez, through his attorney Aaron Cox, purported to exercise the Manager Purchase Option on the Owosso, Ludington, Lapeer, Birch Run, Alpena, Otsego and Cadillac restaurants and real property by mailing written notices to Plaintiffs. *See* Notices, dated December 1, 2022 **(Ex. 1-14)**.

52. The Notices all stated that Fernandez was immediately exercising the Manager Purchase Option for Fernandez, as Manager or President of each business, to purchase Plaintiffs' shares or interests in each company.

53. In each Notice, Fernandez demanded that Plaintiffs execute an assignment of all their interests or shares by December 5, 2022 or "Fernandez shall execute same on your behalf pursuant to Section 18(e) of the Agreement." *See e.g.* Ex. 1.

54. Each Notice further directed Plaintiffs to "return any and all documents related to the Company or applicable to the Company's business to the Company immediately." *See e.g.* Ex. 1.

55. The Notices further included a threat that "the provisions of the Agreement relating to non-competition and non-solicitation will be strictly enforced by the Company." *See e.g.* Ex. 1.

56. Each and every Notice breached the Agreements and were null and void because they did not provide 30-days' written notice as required under each Agreement.

57. Each Notice further purported to state an unconscionably low purchase price for the Plaintiffs' interests and shares, which amounts were not calculated in compliance with each respective Agreement.

58. Through this scheme, Fernandez unilaterally, in breach of contract, and without Plaintiffs' consent, re-characterized the investment funds supplied by Plaintiffs as unsecured debt, which Fernandez sought to repay over terms ranging from 10 to 20 years.

59. Plaintiffs invested substantially more money in the various Defendant businesses than the amount Fernandez attempted to recharacterize as unsecured debt.

60. Defendant Fernandez personally benefitted by the conversion of Plaintiffs' investment funding to an unsecured loan because it allowed him to purchase or create additional Culvers Restaurants which he controlled without providing any equity to Plaintiffs, whose funding made the purchases possible.

61. Plaintiffs did not consent to the use of their equity investment funding to be converted to unsecured loans for which they would not receive repayment for in some cases as much as 20 years.

A. The Original Funding Amounts and Equity

62. In order to facilitate the investment of funds, Plaintiffs and Defendant Fernandez set up a bank account through which Plaintiffs' investment money would flow (the "Investment Account").

(i) *The Owosso Restaurant*

63. The first restaurant Plaintiffs funded was the purchase of an operating Culvers location in Owosso, Michigan that was owned by Defendant S&L Properties Owosso, LLC ("S&L Properties"), a Wisconsin limited liability company, in which Defendant Fernandez already had an ownership interest. In May and August of 2019, Plaintiffs contributed funds totaling approximately $2,745,003.12 for the transaction. $2,200,000 was wired by Plaintiffs directly to bank accounts controlled by S&L Properties and Defendant Fernandez. The remainder was deposited in the Investment Account.

64. S&L Properties and Defendant Owosso Burgers, Inc., a Wisconsin corporation, issued a Promissory Note **(Ex. 15)** to Plaintiffs in the amount of $2,745,312.62 for this transaction.

65. Defendant Fernandez executed a Guaranty **(Ex. 16)** in which he personally guaranteed payment of all present and future indebtedness of S&L Properties and Owosso Burgers, Inc. to Plaintiffs.

66. Upon information and belief, Owosso Burgers, Inc. operates the restaurant. Defendant Fernandez formed the Defendant entity ODW Properties - Owosso, LLC to own the real estate. It is unknown whether any assets related to the Owosso restaurant were ever transferred to ODW Properties – Owosso, LLC.

67. Defendant Fernandez drafted a Revised Shareholders Agreement for Owosso Burgers, Inc., dated February 11, 2022, amended May 31, 2022 **(Ex. 17)**, which showed 25,000 shares owned by the Trust, and 75,000 shares owned by Defendant Fernandez. No capital contributions were specified.

68. Defendant Fernandez drafted a Revised Buy-Sell Agreement, dated February 11, 2022 **(Ex. 18),** amending and replacing versions dated August 6, 2021 and August 8, 2021, for the Defendant ODW Properties – Owosso, LLC. That document stated membership interests of 30% for the Trust with an initial capital contribution of $30,000, and a membership for Defendant Fernandez of 70% with an initial capital contribution of $70,000.

69. Upon information and belief, the capital contributions for Defendant Owosso Burgers, Inc. and Defendant ODW Properties – Owosso, LLC were funded almost entirely by the investment funds provided by Plaintiffs for the purpose of buying out existing shareholders and owners of Owosso Burgers, Inc. and S&L properties.

70. Upon information and belief, the purchase price for the Owosso Culvers Restaurant was approximately $2,970,221, of which $2,845,000 was contributed by Plaintiffs through the Investment account.

71. Upon information and belief, Defendant Fernandez contributed only a small portion of the purchase price for the Owosso restaurant and real property, which was in the form of equity based on Fernandez' former minority interests in the Wisconsin entities.

72. The Notice for Owosso Burgers, Inc. **(Ex. 1)** purported to purchase all 25,000 shares owned by Plaintiff Trust for $19,543.18. That amount materially understated Plaintiffs' initial capitalization.

73. No Notice was provided for ODW Properties – Owosso, LLC. Upon information and belief, Defendant Fernandez intended the Notice referencing S&L Properties Owosso, LLC **(Ex. 2)** to apply to ODW Properties – Owosso, LLC. That purported Notice claimed that no amounts were due for the purchase of Plaintiffs' 30% interest by Defendant Fernandez.

(ii) *The Ludington and Lapeer Restaurants*

74. Plaintiffs funded the construction of two Culvers locations, in Ludington and Lapeer, Michigan, which were built simultaneously. From May 2019 through July of 2020, Plaintiffs deposited funds totaling $5,080,000 into the

Investment Account for the formation of these two restaurants, and construction costs.

75. Defendant Fernandez formed the Defendant Ludington Burgers, Inc. to operate the Ludington restaurant, and Defendant ODW Properties - Ludington, LLC to own the real estate.

76. Defendant Fernandez drafted a Revised Shareholders Agreement for Ludington Burgers, Inc., dated February 11, 2022 **(Ex. 19)**, amending and replacing versions dated September 25, 2019, August 6, 2021, and November 8, 2021, which stated 30,000 shares owned by the Trust, 51,000 shares owned by Defendant Fernandez, and 19,000 shares owned by Kayla Grannan. No capital contributions were specified.

77. Defendant Fernandez drafted a Revised Buy-Sell Agreement, dated February 11, 2022 **(Ex. 20),** amending and replacing versions dated September 25, 2019, August 6, 2021, and November 8, 2021, for the Defendant ODW Properties – Ludington, LLC, which stated membership interests of 30% for the Trust with an initial capital contribution of $30,000, and a membership for Defendant Fernandez of 70% with an initial capital contribution of $70,000.

78. Upon information and belief, the capital contributions for Defendant Ludington Burgers, Inc. and Defendant ODW Properties – Ludington, LLC were

funded primarily by the investment funds provided by Plaintiffs or capital from the Owosso store.

79. The Notice for Ludington Burgers, Inc. **(Ex. 3)** purported to purchase all 30,000 shares owned by Plaintiffs for $0. That amount materially understated Plaintiffs' initial capitalization.

80. The Notice for ODW Properties – Ludington, LLC **(Ex. 4),** claimed that no amounts were due for the purchase of Plaintiffs' 30% interest by Defendant Fernandez.

81. Defendant Fernandez formed the Defendant entity Lapeer Burgers, Inc. to operate the Lapeer restaurant, and Defendant ODW Properties - Lapeer, LLC to own the real estate.

82. Defendant Fernandez drafted a Revised Shareholders Agreement for Lapeer Burgers, Inc., dated February 11, 2022 **(Ex. 21),** amending and replacing versions dated June 25, 2019, August 6, 2021, and November 8, 2021, which stated 30,000 shares owned by the Trust, and 70,000 shares owned by Defendant Fernandez. No capital contributions were specified.

83. Defendant Fernandez drafted a Buy-Sell Agreement, dated February 11, 2022 **(Ex. 22),** amending and replacing versions dated July 1, 2019, August 13, 2021, and November 8, 2021, for the Defendant ODW Properties – Lapeer, LLC, which stated membership interests of 30% for the Trust with an initial capital

contribution of $30,000, and a membership interest for Defendant Fernandez of 70% with an initial capital contribution of $70,000.

84. Upon information and belief, the capital contribution for Defendants Lapeer Burgers, Inc., and ODW Properties – Lapeer, LLC, were funded primarily by the investment funds provided by Plaintiffs or capital from other stores.

85. The Notice for Lapeer Burgers, Inc. **(Ex. 5)** purported to purchase all 30,000 shares owned by Plaintiffs for $0. That amount materially understated Plaintiffs' initial capitalization.

86. The Notice for ODW Properties – Lapeer, LLC **(Ex. 6),** claimed that no amounts were due for the purchase of Plaintiffs' 30% interest by Defendant Fernandez.

87. Upon information and belief, the purchase price and construction costs for the Ludington and Lapeer restaurants were funded primarily from the Investment Account funded by Plaintiffs, or funds from the Owosso store.

(iii) *The Birch Run Restaurant*

88. Plaintiffs funded the purchase of a Culvers location in Birch Run, Michigan. Plaintiffs deposited funds totaling $3,900,000 into the Investment Account for the transaction.

89. Defendant Fernandez formed the Defendant entity Birch Run MI Burgers, Inc. to purportedly operate the restaurant, and Defendant ODW Properties – Birch Run, LLC to own the real estate.

90. Defendant Fernandez drafted a Revised Shareholders' Agreement for the inaccurately designated entity Birch Run Burgers, Inc., dated February 11, 2022 **(Ex. 23)**, allegedly amending and replacing versions dated November 20, 2020, and November 8, 2021, which showed 30,000 shares owned by the Trust, 51,000 shares owned by Defendant Fernandez, and 19,000 shares owned by Nikki Watson. No capital contributions were specified.

91. Upon information and belief, no Revised Shareholders' Agreement exists for Defendant Birch Run MI Burgers, Inc.

92. Defendant Fernandez drafted a Revised Buy-Sell Agreement, dated February 11, 2022 **(Ex. 22),** amending and replacing versions dated November 11, 2020, and November 8, 2021, for the Defendant ODW Properties – Birch Run, LLC, which stated membership interests of 30% for the Trust with an initial capital contribution of $30,000, and a membership interest for Defendant Fernandez of 70% with an initial capital contribution of $70,000.

93. Upon information and belief, the capital contributions for Defendant Birch Run Burgers, Inc. (properly Birch Run MI Burgers, Inc.) and Defendant

ODW Properties – Birch Run, LLC were funded solely by the investment funds provided by Plaintiffs.

94. The Notice for the unregistered entity Birch Run Burgers, Inc. **(Ex. 7)** purported to purchase all 30,000 shares owned by Plaintiffs for $8,188.01. That amount materially understated Plaintiffs' initial capitalization of the Birch Run restaurant.

95. The Notice for ODW Properties – Birch Run, LLC **(Ex. 8),** claimed that no amounts were due for the purchase of Plaintiffs' 30% interest by Defendant Fernandez.

96. Upon information and belief, the entire purchase price for the Birch Run restaurant was funded from the Investment Account funded by Plaintiffs.

(iv) *The Alpena Restaurant*

97. Plaintiffs funded the purchase of a Culvers location in Alpena, Michigan. Plaintiffs deposited funds totaling $2,200,000 into the Investment Account for the transaction on July 27, 2021.

98. Defendant Fernandez formed the Defendant entity Alpena Burgers, Inc. to operate the restaurant, and Defendant ODW Properties – Alpena, LLC to own the real estate.

99. Defendant Fernandez drafted a Revised Shareholders Agreement for Alpena Burgers, Inc., dated February 11, 2022 **(Ex. 25),** amending and replacing

versions dated July 16, 2021, and November 8, 2021, which showed 30,000 shares owned by the Trust, and 70,000 shares owned by Defendant Fernandez. No capital contributions were specified.

100. Defendant Fernandez drafted a Revised Buy-Sell Agreement, dated February 11, 2022 **(Ex. 26)**, amending and replacing versions dated July 16, 2021, and November 8, 2021, for the Defendant ODW Properties – Alpena, LLC, which stated membership interests of 30% for the Trust with an initial capital contribution of $30,000, and a membership interest for Defendant Fernandez of 70% with an initial capital contribution of $70,000.

101. Upon information and belief, the capital contribution for Defendant Alpena Burgers, Inc., and Defendant ODW Properties – Alpena, LLC were funded solely by the investment funds provided by Plaintiffs.

102. The Notice for Alpena Burgers, Inc. **(Ex. 9)** purported to purchase all 30,000 shares owned by Plaintiffs for $197,510.84. That amount materially understated Plaintiffs' initial capitalization.

103. The Notice for ODW Properties – Alpena, LLC **(Ex. 10),** claimed that no amounts were due for the purchase of Plaintiffs' 30% interest by Defendant Fernandez.

104. Upon information and belief, the entire purchase price for the Alpena restaurant was funded solely from the Investment Account funded by Plaintiffs.

(v) *The Otsego Restaurant*

105. Plaintiffs participated in the funding of the purchase of a Culvers location in Otsego, Michigan.

106. Upon information and belief, proceeds of the funds deposited in the Investment Account or distributed from other restaurants without shareholder approval were used for a downpayment for a loan from Wells Fargo Bank, and other restaurants for which Plaintiffs provided capital were used as security for that same transaction.

107. Defendant Fernandez formed the Defendant entity Otsego Burgers, Inc. to operate the restaurant, and Defendant ODW Properties – Otsego, LLC to own the real estate.

108. Defendant Fernandez drafted a Revised Shareholders Agreement for Otsego Burgers, Inc., dated February 11, 2022 **(Ex. 27),** amending and replacing a version dated November 8, 2021, which showed 25,000 shares owned by the Trust, and 50,000 shares owned by Defendant Fernandez, and 25,000 shares owned by Jason Rivest. No capital contributions were specified.

109. Defendant Fernandez drafted a Revised Buy-Sell Agreement, dated February 11, 2022 **(Ex. 28)**, amending and replacing a version dated November 8, 2021, for the Defendant ODW Properties – Otsego, LLC, which stated membership interests of 30% for the Trust with an initial capital contribution of

$30,000, and a membership interest for Defendant Fernandez of 70% with an initial capital contribution of $70,000.

110. Upon information and belief, the downpayments and capital contributions for Defendant Otsego Burgers, Inc., and Defendant ODW Properties – Otsego, LLC were funded solely by the investment funds provided by Plaintiffs, or unapproved distributions from other restaurants funded primarily by Plaintiffs.

111. The Notice for Otsego Burgers, Inc. **(Ex. 11)** purported to purchase all 25,000 shares owned by Plaintiffs for $0. That amount materially understated Plaintiffs' initial capitalization.

112. The Notice for ODW Properties – Otsego, LLC **(Ex. 12),** claimed that no amounts were due for the purchase of Plaintiffs' 30% interest by Defendant Fernandez.

113. Upon information and belief, the downpayment for the Otsego restaurant was funded from the Investment Account funded by Plaintiffs, or unapproved distributions from other restaurants funded primarily by Plaintiffs.

(vi) *The Cadillac Restaurant*

114. Plaintiffs participated in the funding of the purchase of a Culvers location in Cadillac, Michigan.

115. Upon information and belief, proceeds of the funds deposited in the Investment Account, or unapproved distributions from other restaurants, were used

for a downpayment for a loan from Wells Fargo Bank, and other restaurants for which Plaintiffs provided capital were used as security for that same transaction.

116. Defendant Fernandez formed the Defendant entity Cadillac Burgers, Inc. to operate the restaurant, and Defendant ODW Properties – Cadillac, LLC to own the real estate.

117. Defendant Fernandez drafted a Revised Shareholders Agreement for Cadillac Burgers, Inc., dated February 11, 2022 **(Ex. 29),** amending and replacing versions dated November 20, 2020, and November 8, 2021, which showed 30,000 shares owned by the Trust, and 70,000 shares owned by Defendant Fernandez. No capital contributions were specified.

118. Defendant Fernandez drafted a Revised Buy-Sell Agreement, dated February 11, 2022 **(Ex. 30)**, amending and replacing versions dated August 6, 2021, and November 8, 2021, for the Defendant ODW Properties – Cadillac, LLC, which stated membership interests of 30% for the Trust with an initial capital contribution of $30,000, and a membership interest for Defendant Fernandez of 70% with an initial capital contribution of $70,000.

119. Upon information and belief, the downpayments and capital contributions for Defendant Cadillac Burgers, Inc., and Defendant ODW Properties – Cadillac, LLC were funded solely by the investment funds provided

by Plaintiffs, or unapproved distributions from other restaurants funded by Plaintiffs.

120. The Notice for Cadillac Burgers, Inc. **(Ex. 13)** purported to purchase all 30,000 shares owned by Plaintiffs for $0. That amount materially understated Plaintiffs' initial capitalization.

121. The Notice for ODW Properties – Cadillac, LLC **(Ex. 14),** claimed that no amounts were due for the purchase of Plaintiffs' 30% interest by Defendant Fernandez.

122. Upon information and belief, the downpayment for the Cadillac restaurant was funded from the Investment Account funded by Plaintiffs, or unapproved distributions from other restaurants funded by Plaintiffs.

123. Defendant Fernandez represented to Plaintiffs that they would receive equity interests in the foregoing companies as well as others, including but not limited to a restaurant to be located in Monroe, Michigan, and 3 restaurants in South Carolina, in exchange for the funding they provided.

124. Defendant Fernandez drafted intentionally complex agreements that allowed him to unilaterally change Plaintiffs' equity interests for his own personal benefit into unsecured loans by giving 30-days' written notice that Plaintiffs' equity interests were being terminated, and rushed Plaintiffs to sign those documents based on false pretenses.

125. Defendant Fernandez stood in a fiduciary position to Plaintiffs as a result of Plaintiffs' minority positions in these companies.

126. On December 1, 2022, Defendant Fernandez purported to give 30-days' written notice of termination of each Agreement and exercise of the Manager Purchase Option with an effective date of less than 30 days. This was a violation of the Agreements.

127. Defendant Fernandez then unilaterally decided to treat the money provided by Plaintiffs as a simple unsecured loan.

128. Plaintiffs never intended their investments to be treated as unsecured loans and believed at all times that they were purchasing equity interests in the referenced companies.

129. The December 1, 2022 Notices were defective and of no effect because they did not provide the required 30-days' notice, and because they were issued as part of a scheme to defraud and oppress Plaintiffs' rights as shareholders and members of the Defendant companies.

## COUNT I - VIOLATION OF SECURITIES AND EXCHANGE ACT OF 1934, 15 U.S.C. 78j and 17 C.F.R. 240.10b-5

130. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 129.

131. Defendants violated Section 10b of the Securities and Exchange Act of 1934, 15 U.S.C. 78j ("Section 10b") by using means and instrumentalities of interstate commerce and the mails to employ, in connection with an unregistered security, a manipulative or deceptive device or contrivance in contravention of a Rule of the Commission, being 17 C.F.R. 240.10b-5 ("Rule 10b-5") under which Defendants knowingly misrepresented the nature of Plaintiffs' investments in the restaurants identified above, and unilaterally converted Plaintiffs' equity interests into unsecured loans with extended repayment periods.

132. Rule 10b-5 makes it unlawful for any person, directly or indirectly, to use any instrumentality of interstate commerce, or of the mails "(a) To employ any devise, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. 240.10b-5.

133. The securities sold by Defendants and purchased by Plaintiffs as detailed above were "securities" within the meaning of Section 10b and Rule 10b-5.

134. Defendants' actions in misrepresenting the nature of Plaintiffs' investments, and Defendants' scheme to convert Plaintiffs' equity interests into unsecured loans without consent is a device, scheme, or artifice to defraud Plaintiffs.

135. Defendant Fernandez stated to Plaintiffs on numerous occasions that the Manager Purchase Option only applied to the owner/operators or each restaurant and would not be enforced against Plaintiffs as passive investors. Those statements were untrue and misleading within the meaning of Rule 10b-5.

136. Defendants engaged in an act, practice and course of business which operated to induce Plaintiffs to make significant and continuing equity investments in the restaurants identified above with the knowledge and intent to divest Plaintiffs of their equity interests for substantially less than the amount of those investments, and effectively convert Plaintiffs' investments to unsecured loans with extended repayment terms. Defendant Fernandez then used the equity from the restaurants for which Plaintiffs provided capital to fund other restaurants in which Plaintiffs were not provided any equity interests. These actions, practices and courses of business operated as a fraud and deceit upon Plaintiffs within the meaning of Rule 10b-5.

137. Defendants' conduct was willful, knowing and intended to deceive and manipulate Plaintiffs.

138. Plaintiffs justifiably relied upon Defendants' false statements and omissions when deciding to invest in the restaurants identified above.

139. Defendants made use of means and instrumentalities of interstate commerce by sending the Notices described above through the United States Mail. Defendant Fernandez also had numerous discussions and communications with Plaintiffs by mobile phone and text messaging and electronic mail in which Defendant Fernandez represented to Plaintiffs that they would receive equity in each restaurant in which Plaintiffs invested, and each subsequent restaurant that was purchased or funded directly with Plaintiffs' funds, or indirectly through the use of distributions or collateral from restaurants funded by Plaintiffs.

140. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial, at least in the total amount of their investments, the value of their equity interests in each restaurant, in addition to interest and costs including reasonable attorney fees.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. Awarding damages to Plaintiffs in an amount equal to the Purchase Price calculation methodology contained in the

Agreements for option purchases made more than two years after the date of each Agreement; plus the amount of Plaintiffs' total investments, including interest from the date of each investment.

C. An award of Plaintiffs' costs, including reasonable attorney's fees.

D. Exemplary damages in an amount to be determined.

E. Such other and further relief as this Honorable Court deems just, equitable and appropriate.

**COUNT II - SHAREHOLDER OPPRESSION (MICHIGAN SHAREHOLDER OPPRESSION STATUTE), MCL 450.1489**

141. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 140.

142. Defendant Fernandez' actions constitute shareholder oppression under the Michigan Shareholder Oppression statute, MCL § 450.1489.

143. The elements of a claim under the Michigan Shareholder Oppression statute are:

a. The plaintiff is a shareholder in a corporation.

b. The defendant has engaged in willfully unfair and oppressive conduct towards the plaintiff.

c. The plaintiff has suffered harm as a result of the oppressive conduct.

144. Plaintiff Trust is a shareholder in the Defendant corporations.

145. Defendant Fernandez has engaged in a continuing course of conduct or a significant action or series of actions that substantially interfere with the interests of Plaintiff Trust as a shareholder within the meaning of MCL 450.1489. These actions include interference with distributions and other shareholder interests disproportionately to Plaintiff, unilaterally converting Plaintiffs' equity interests into unsecured loans, invalidly attempting to exercise the Manager Purchase Options, failing to provide proper notice of termination in the Notices, and failing to properly calculate and pay the correct Manager Purchase Option payments even if the Notices had been proper.

146. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial, not less than the amount of their investment of at least $14,453,510, less any payments made.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and canceling the Manager Purchase Option in the relevant Agreements under MCL 450.1489(1)(b) and (c).

B. Directing the purchase at fair value of the shares of Plaintiff Trust as allowed by MCL 450.1489(1)(e).

C. Awarding damages to Plaintiffs under MCL.1489(f) in an amount equal to the amount of Plaintiffs' total investment, plus interest from the date of each investment.

D. An award of Plaintiffs' costs, including reasonable attorneys fees as allowed by statute.

E. Exemplary damages in an amount to be determined.

F. Such other and further relief as this Honorable Court deems just and appropriate.

**COUNT III - MEMBER OPPRESSION (MICHIGAN LIMITED LIBILITY MEMBER OPPRESSION STATUTE), MCL 450.4515**

147. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 146.

148. Defendant Fernandez' actions constitute member oppression under the Michigan Limited Liability Company Member Oppression statute, MCL § 450.4515.

149. The elements of a claim under the Michigan Limited Liability Company Member Oppression statute are:

a. The plaintiff is a member in a limited liability company.

b. The defendant has engaged in willfully unfair and oppressive conduct towards the plaintiff.

c. The plaintiff has suffered harm as a result of the oppressive conduct.

150. Plaintiff Trust is a member in the Defendant limited liability companies.

151. Defendant Fernandez has engaged in a continuing course of conduct or a significant action or series of actions that substantially interfere with the interests of Plaintiff Trust as a member within the meaning of MCL 450.4515. These actions include interference with distributions and other member interests disproportionately to Plaintiff, unilaterally converting Plaintiffs' equity interests into unsecured loans, invalidly attempting to exercise the Manager Purchase Options, failing to provide proper notice of termination in the Notices, and failing

to properly calculate and pay the correct Manager Purchase Option payments even if the Notices had been proper.

152. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial, not less than the amount of their investment of at least $14,453,510, less any payments made.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and canceling the Manager Purchase Option in the relevant Agreements under MCL 450.4515(1)(b) and (c).

B. Directing the purchase at fair value of the member interests of Plaintiff Trust as allowed by MCL 450.1489(1)(d).

C. Awarding damages to Plaintiffs under MCL.1489(e) in an amount equal to the amount of Plaintiffs' total investment, plus interest from the date of each investment.

D. An award of Plaintiffs' costs, including reasonable attorneys fees as allowed by statute.

E. Exemplary damages in an amount to be determined.

F. Such other and further relief as this Honorable Court deems just and appropriate.

## COUNT IV - MISREPRESENTATION

153. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 152.

154. Defendant made false representations to Plaintiffs regarding the equity interests that Plaintiffs would receive as a result of their investments in the business entities referenced herein, and the conversion of their loans to unsecured loans with extended payment periods.

155. The elements of a misrepresentation claim are:

a. The defendant made a false representation.

b. The representation was material.

c. The defendant knew the representation was false or made it recklessly.

d. The defendant intended the plaintiff to rely on the representation.

e. The plaintiff relied on the representation.

f. The plaintiff suffered damages as a result.

156. Defendant made materially false representations regarding Plaintiffs' equity interests, knowing they were false, with the intent that Plaintiffs rely on them, and invest money in businesses controlled by Defendant Fernandez.

157. Plaintiffs reasonably relied on these misrepresentations to their detriment and suffered damages as a result.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. Awarding damages to Plaintiffs in the amount of Plaintiffs' total investment, plus interest from the date of each investment, together with the value of Plaintiffs' equity interest in each entity.

C. Awarding foreseeable consequential damages in an amount to be determined at trial.

D. An award of Plaintiffs' costs, including reasonable attorneys as allowed by law.

E. Exemplary damages in an amount to be determined.

F. Such other and further relief as this Honorable Court deems just and appropriate.

## COUNT V - FRAUD

158. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 157.

159. Defendant engaged in fraudulent activities by misrepresenting the nature of Plaintiffs' investment and unilaterally converting their equity interests into unsecured loans.

160. Defendant Fernandez falsely represented how Plaintiffs’ investments would be used and their equity interests in each respective Defendant business, and future restaurants.

161. The elements of fraud are:

a. The defendant made a false representation.

b. The defendant knew the representation was false or made it recklessly.

c. The defendant intended the plaintiff to rely on the representation.

d. The plaintiff relied on the representation.

e. The plaintiff suffered damages as a result.

162. Defendant Fernandez knowingly made false representations about the use of Plaintiffs’ investments and Plaintiffs' equity interests, with the intent that Plaintiffs rely on them.

163. Plaintiffs would not have made the investments they did but for Defendant Fernandez' false representations and actions.

164. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. Awarding damages to Plaintiffs in the amount of Plaintiffs' total investment, plus interest from the date of each investment, together with the value of Plaintiffs' equity interest in each entity.

C. Awarding foreseeable consequential damages in an amount to be determined at trial.

D. An award of Plaintiffs' costs, including reasonable attorneys as allowed by law.

E. Exemplary damages in an amount to be determined.

F. Such other and further relief as this Honorable Court deems just and appropriate.

## COUNT VI - BREACH OF CONTRACT

165. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 164.

166. Plaintiffs and Defendant Fernandez entered into the Agreements referenced above based upon Fernandez' representations that Plaintiffs would receive equity interests in the various companies in exchange for their funding.

167. Defendant breached the agreements by attempting to unilaterally convert Plaintiffs' equity interests into unsecured loans and provide less than 30-days' written notice of alleged purchase of Plaintiffs' interest as required by the terms of the Agreements.

168. The elements of a breach of contract claim are:

a. The existence of a contract.

b. The plaintiff performed their obligations under the contract.

c. The defendant breached the contract.

d. The plaintiff suffered damages as a result.

169. Plaintiffs performed their obligations under the Agreements by providing funding, and Defendants breached the Agreements by attempting to invalidly convert Plaintiff Trust's equity interests and failing to provide proper 30-days' notice to exercise the Manager Purchase Option.

170. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial, up to at least the amount of their investments and the value of their equity interests.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. Awarding damages to Plaintiffs in an amount equal to the Purchase Price calculation methodology contained in the Agreements for option purchases made more than two years after the date of each Agreement, and the amount of Plaintiffs' total investment, plus interest from the date of each investment.

C. An award of Plaintiffs' costs, including reasonable attorneys as authorized by law or contract.

D. Exemplary damages in an amount to be determined.

E. Such other and further relief as this Honorable Court deems just and appropriate.

## COUNT VII – COMMON LAW CONVERSION OF MONEY

171. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 170.

172. Defendant Fernandez converted money belonging to Plaintiffs by treating their investment as an unsecured loan without their consent, or otherwise exercising dominion or control over such funds contrary to Plaintiffs' rights or Plaintiffs' intent.

173. The elements of a conversion claim are:

a. The plaintiff had a right to possession of the property.

b. The defendant's wrongful act or disposition of the property denied the plaintiff of that right.

c. The plaintiff suffered damages as a result.

174. Plaintiffs had a right to their invested money, equity interests and any declared distributions or other use of funds from Defendant businesses, and Defendant's wrongful conversion of that money for his own benefit, and into unsecured loans denied Plaintiffs of their rights.

175. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial, up to at least the amount of their investments and the value of the equity interests.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. Awarding damages to Plaintiffs in the amount of Plaintiffs' total investments, any distributions and equity, plus interest from the date of each investment.

C. Awarding foreseeable consequential damages in an amount to be determined at trial.

D. An award of Plaintiffs' costs, including reasonable attorneys as allowed by law.

E. Exemplary damages in an amount to be determined.

F. Such other and further relief as this Honorable Court deems just and appropriate.

**COUNT VIII - STATUTORY CONVERSION (MICHIGAN CONVERSION STATUTE), MCL 600.2919a**

176. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 175.

177. Defendant Fernandez wrongfully exerted wrongful dominion and control over Plaintiffs' money by unilaterally converting Plaintiff Trust's equity interests into unsecured loans without consent, declaring distributions without

authorization and converting the money to his own use and benefit in violation of MCL § 600.2919a.

178. The elements of a statutory conversion claim under MCL § 600.2919a are:

a. The defendant converted the plaintiff's property to the defendant's own use.

b. The conversion was without the plaintiff's consent.

c. The plaintiff suffered damages as a result.

179. Defendant Fernandez converted Plaintiffs' money to his own use without their consent, treating their investment as an unsecured loan, contrary to Plaintiffs' intent and without their consent.

180. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial, up to at least the amount of their investments and the value of the equity interests, including treble damages as allowed under the statute.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. Awarding damages to Plaintiffs in the amount of Plaintiffs' total investment, distributions and equity, plus interest from the date of each investment.

C. Treble damages as authorized by statute.

D. Awarding foreseeable consequential damages in an amount to be determined at trial.

E. An award of Plaintiffs' costs, including reasonable attorneys as allowed by statute, MCL 600.2919a.

F. Exemplary damages in an amount to be determined.

G. Such other and further relief as this Honorable Court deems just and appropriate.

**COUNT IX - VIOLATION OF MICHIGAN UNIFORM SECURITIES ACT (2002), MCL 451.2101, ET SEQ.**

181. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 180.

182. Defendants violated the Michigan Uniform Securities Act by misrepresenting the nature of Plaintiffs' investment and unilaterally converting their equity interests into unsecured loans.

183. The shares and membership interests identified in this Complaint constitute securities within the meaning of the Michigan Uniform Securities Act, MCL 451.2102c.

184. Defendant Fernandez and the Defendant companies employed a device, scheme, or artifice to defraud Plaintiffs by inducing them to purchase shares in the Defendant corporations and interests in the Defendant limited liability companies.

185. Defendant Fernandez made untrue statements of material fact in order to mislead Plaintiffs into purchasing shares or interests in the Defendant businesses.

186. Defendant Fernandez' actions, practices and course of business operated as a fraud or deceit upon Plaintiffs because Fernandez misrepresented that Plaintiff Trust would receive equity as part of its compensation for investing in the businesses.

187. Section 509 of the Michigan Uniform Securities Act provides a civil cause of action in this case. MCL 451.2509.

188. Plaintiffs are entitled to recovery of the consideration paid for the securities, 6% interest per year from the date of purchase, plus costs and reasonable attorney fees determined by the court, or actual damages. MCL 451.2509.

189. Defendant's actions in misrepresenting the investment and converting equity interests into loans without consent constitute a violation of Section 501 of the Michigan Uniform Securities Act, MCL 451.2501.

190. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. Awarding damages to Plaintiffs in an amount equal to the Purchase Price calculation methodology contained in the Agreements for option purchases made more than two years after the date of each Agreement, and the amount of Plaintiffs' total investment, plus interest pursuant to the statute from the date of each investment.

C. An award of Plaintiffs' costs, including reasonable attorneys as authorized by Statute.

D. Exemplary damages in an amount to be determined.

E. Such other and further relief as this Honorable Court deems just and appropriate.

## COUNT X – BREACH OF FIDUCIARY DUTY

191. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 190.

192. Defendant engaged in fraudulent activities by misrepresenting the nature of Plaintiffs' investment and unilaterally converting their equity interests into unsecured loans.

193. Defendant Fernandez falsely represented how Plaintiffs' investments would be used and their equity interests in each respective Defendant business.

194. Defendant Fernandez had a fiduciary duty to Plaintiffs as minority investors and owners of the businesses referenced herein.

195. Defendant Fernandez breached his fiduciary duty to Plaintiffs by knowingly misleading Plaintiffs regarding the use of their investments, and by making false representations about Plaintiffs' equity interests, with the intent that Plaintiffs rely on them, and by converting Plaintiffs' funds to his own use and benefit.

196. Plaintiffs would not have made the investments they did but for Defendant Fernandez' false representations and actions.

197. As a result of Defendant's actions, Plaintiffs have suffered damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs respectfully request entry of an Order for relief as follows:

A. Declaring the Notices, dated December 1, 2022, as void and of no effect, and setting them aside.

B. An accounting of all distributions from each Defendant business.

C. Awarding damages to Plaintiffs in the amount of Plaintiffs' total investments and equity, plus interest from the date of each investment.

D. Awarding foreseeable consequential damages in an amount to be determined at trial.

E. An award of Plaintiffs' costs, including reasonable attorneys as allowed by law.

F. Exemplary damages in an amount to be determined.

G. Such other and further relief as this Honorable Court deems just and appropriate.

**COUNT XI – BREACH OF PROMISSORY NOTE**

198. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 197.

199. Defendants S&L Properties Owosso, LLC, a Wisconsin limited liability company, and Owosso Burgers, Inc., a Wisconsin corporation, both operated by Defendant Fernandez, executed a Promissory Note in favor of Plaintiffs in the amount of $2,745,312.62. **(Ex. 29)**

200. Defendant S&L Properties Owosso, LLC ("S&L Properties") has not been in good standing in the State of Michigan since March 1, 2022.

201. Upon information and belief, Defendant S&L Properties conducts no legally qualified business in Michigan, and has breached its obligations under the Promissory Note.

202. Defendant Fernandez failed to maintain the legal status and viability of S&L Properties.

203. There was implied in the Promissory Note a duty of good faith and fair dealing.

204. By failing to operate and maintain the legal status of S&L Properties, Defendants S&L Properties and Fernandez have caused one of the makers of the Promissory Note to be unavailable to satisfy the obligation created under the Promissory Note.

205. Making S&L Properties unavailable to satisfy the obligations of the Promissory Note violated the covenant of good faith and fair dealing implied by the Promissory Note, and breached the Note.

206. As a result of the breach, the full amount of the Promissory Note is now due and owing.

WHEREFORE, Plaintiffs respectfully request entry of Judgment against Defendants Fernandez, S&L and Owosso Burgers, Inc., jointly and severally, for the remaining balance of the Promissory Note, together with their costs including reasonable attorney fees incurred in this action, and such other relief as the Court deems appropriate.

**COUNT XII – BREACH OF GUARANTY**

207. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 206.

208. On or about August 22, 2019, Defendant Fernandez executed a Guaranty **(Ex. 16)** in favor of Plaintiffs for payment of the Promissory Note, and all other indebtedness of S&L and Owosso Burgers, Inc. to Plaintiffs.

209. Defendants have breached the Promissory Note by failing to maintain the legal status and viability of S&L.

210. Plaintiffs have accelerated the full balance due under the Promissory Note.

211. Defendant Fernandez is liable for all amounts due under the Promissory Note or otherwise by S&L and Owosso Burgers, Inc. to Plaintiffs,

including Plaintiffs' costs and reasonable attorney fees under the terms of the Guaranty.

WHEREFORE, Plaintiffs respectfully request entry of Judgment against Defendant Fernandez for the remaining balance of the Promissory Note, together with their costs including reasonable attorney fees incurred in this action, and such other and further relief as the Court deems appropriate.

Respectfully submitted,

Dated: November 26, 2024

/s/ Jeffrey S. Theuer

Jeffrey S. Theuer (P44161)
Foster, Swift, Collins & Smith, P.C.
Attorneys for Plaintiffs
313 S. Washington Square
Lansing, MI 48933
(517) 371-8100

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby request a trial by jury on all issues so triable.

Respectfully submitted,

Dated: November 26, 2024

/s/ Jeffrey S. Theuer
Jeffrey S. Theuer (P44161)
Foster, Swift, Collins & Smith, P.C.
Attorneys for Plaintiffs
313 S. Washington Square
Lansing, MI 48933
(517) 371-8100

38046:00001:200704579-1